UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DIANE COLUCIELLO-PITKOUVICH,

                       Plaintiff,

   -against-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

                      Defendant.
-------------------------------------------------------------x

**MEMORANDUM & ORDER**

Index No. 11-CV-4192 (SLT)

**TOWNES, United States District Judge:**

      Plaintiff Diane Coluciello-Pitkouvich brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security that found her ineligible to receive disability insurance benefits and Supplemental Security Income under the Social Security Act, (the "Act"). The Commissioner found that Coluciello-Pitkouvich maintained a residual function capacity for "light work," even if she was limited to working "in coordination with or [in] proximity to others without being distracted" for only "four hours out of an eight hour [work] day" and denied her claim for disability benefits. (R. 27-28). Currently before the Court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 23, 26.) Coluciello-Pitkouvich argues that the Commissioner did not give appropriate evidentiary weight to two of her treating physicians' medical opinions and failed to consider all of Coluciello-Pitkouvich's impairments. The Commissioner asserts that the decision finding Coluciello-Pitkouvich disabled is correct and should be affirmed. For the following reasons, Coluciello-Pitkouvich's motion for judgment on the pleadings is granted to the extent it seeks remand, the Commissioner's motion is denied, and the case is remanded for further proceedings on the grounds set forth below.

1

**BACKGROUND**

Coluciello-Pitkouvich was born in 1959 and was 51 years old at the time she was last insured. (R. 27, 133). She did not graduate from high school, but completed her GED in her early thirties. (R. 40, 149).

From 1998 to April 13, 2005, Coluciello-Pitkouvich served as a bus matron, earning $15,000.00 a year. (R. 145). In 2002, while on the job, Coluciello-Pitkouvich suffered two back injuries less than a week apart. The incidents were nearly identical. On both occasions she was pushed by the same child on the bus, cumulatively resulting in lower back injuries. As a result, Coluciello-Pitkouvich received workers' compensation. (R. 41, 50). At some point thereafter, she returned to work, but she alleges that her back continued to hurt because many of the routes were long and bumpy. (R. 42).

On April 13, 2005, Coluciello-Pitkouvich left her job due to reported severe back pain and depression and has not worked since. (R. 145). She alleges that, in addition to lower back pain and depression, she suffers from a host of other impairments that contribute to her inability to work. Her alleged impairments include: lower back pain; levo-rotoscoliosis of the lumbar spine; osteopenia; multilevel degenerative lumbar spondylosis; arthritis; emphysema; and left hand paresthesia due to a subsequently-healed fracture of the left middle finger and lacerations to her left ring finger. Coluciello-Pitkouvich additionally suffers from a series of gastrointestinal disorders, namely, peptic ulcers and gastroenteritis of the small and large intestines. (R. 183). Coluciello-Pitkouvich also has a well-documented history of depression. From April to July 2008, and sporadically thereafter, she received therapy and psychiatric treatment for major depressive disorder and was prescribed antidepressants by doctors at the VA Brooklyn Harbor

Health Care System ("Brooklyn VA").[1] (R. 255-57, 504-05, 564-66, 573-579, 583-84, 587-90, 598). In March 2009, Coluciello-Pitkouvich was treated for a "suicidal gesture," after she overdosed on a combination of antidepressant medication and alcohol – supposedly in order to communicate to her family she was "stressed out." (R. 287-293). She also admitted to two suicide attempts several years before. Lastly, Coluciello-Pitkouvich has a history of substance abuse that appears to be in remission. (R. 57, 192).

Coluciello-Pitkouvich filed for Title II, Disability Insurance Benefits on November 21, 2008, alleging that she has been disabled since April 13, 2005 due to back pain and depression. (R. 67, 133-34, 145). The evidence in the record includes medical treatment records and questionnaires from Coluciello-Pitkouvich's treating physicians, Dr. Judy Amalanthan – her internist, and Dr. Jolanta Gurdek – her psychiatrist. The administrative record also includes reports of consultative examinations by psychologist Dr. Michael Pressman on April 17, 2009, physical and rehabilitative specialist Dr. Yinggang Zheng on April 17, 2009, and a mental Residual Function Capacity Assessment ("RFC") completed by psychologist Dr. Robert F. Lopez on June 2, 2009.

Coluciello-Pitkouvich's application was denied by the Social Security Administration on June 9, 2009. She appealed the denial of benefits and requested a hearing, which was held before Administrative Law Judge Gal Lahat on November 1, 2010. (R. 67-75). ALJ Lahat denied plaintiff's claim in a written decision dated January 21, 2011. (R. 8-31). The ALJ found that Coluciello-Pitkouvich suffers from a number of severe impairments – including scoliosis, degenerative disc and joint disease of the lumbar spine, osteopenia, major depression, personality disorder, a history of alcohol abuse, and gastritis (R. 13-14) – that "could reasonably be expected

---

[1] Coluciello-Pitkouvich is the widow of a veteran. (Pl.'s Mot. for J. on the Pleadings 3).

to cause the alleged symptoms," but that her statements regarding "the intensity, persistence and limiting effects" of the impairments was not wholly credible given the record, and thus, concluded that Coluciello-Pitkouvich was not disabled under the Act. (R. 25). The ALJ also found that Coluciello-Pitkouvich's "history of finger and toe fractures; history of laceration from a dog bite; hemorrhoids; and asthma/pulmonary impairment" were non severe impairments. (R. 14).

Coluciello-Pitkouvich filed an appeal to the Social Security Administration Appeals Counsel. On June 24, 2011, the Appeals Council summarily affirmed ALJ Lahat's denial, adopting it as the final decision of the Commissioner. (R. 1-6).

Coluciello-Pitkouvich commenced the instant action on August 26, 2011. She moved for judgment on the pleadings on July 18, 2012, seeking reversal of the Commissioner's decision on the grounds that the Commissioner (1) applied an erroneous legal standard in failing to discuss the evidentiary weight of Coluciello-Pitkouvich's treating psychiatrist's opinion; (2) applied an erroneous legal standard in granting only "limited weight" to Coluciello-Pitkouvich's treating internist's opinion; and (3) that the Commissioner failed to consider all of Coucielo-Pitkouvich's severe impairments. The Commissioner cross-moved for judgment on the pleadings on October 18, 2012, arguing that the Commissioner's decision that the plaintiff is not disabled is correct and should be affirmed.

## DISCUSSION

### A. Standard of Review

This Court may set aside an ALJ's decision only where it is based upon legal error or where its factual findings are not supported by substantial evidence. 42 U.S.C. § 405(g); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "To determine whether the findings are

4

supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)) (internal quotations removed). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). This Court defers to the ALJ's factual findings but reviews its legal determinations *de novo*. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "Where an error of law has been made that might have affected the disposition of the case" this Court will not merely defer "to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (internal quotation marks and citations omitted).

**B. Standard of Review for Disability Determinations**

A claimant must establish that she has a disability within the meaning of the Social Security Act to receive federal disability benefits. 42 U.S.C. § 423(a); *Shaw v. Charter*, 221 F.3d 126, 131 (2d Cir. 2000). Under 42 U.S.C. § 423(d)(1)(A), "disability" is defined as an "inability to engage in any substantial gainful employment by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Balsamo*, 142 F.3d at 79. "The impairment must be of 'such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw*, 221 F.3d at 131 (quoting 42 U.S.C. § 423(d)(2)(A)).

In evaluating a claim for disability benefits, the ALJ must follow the five-step procedure set forth by the Act. 20 C.F.R. §§ 404.1520; *Diaz v. Shalala*, 59 F.3d 307, 312 n.2 (2d Cir. 1995); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience…. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467) (alterations and omission in original). The claimant bears the burden of proof in the first four steps of the inquiry, while the Commissioner bears the burden in the fifth. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see also Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo*, 142 F.3d at 80).

**C. Analysis**

Coluciello-Pitkouvich contends that the ALJ erred in steps two and four of the analysis.

**1. The ALJ Properly Determined which of Coluciello-Pitkouvich's Impairments Were "Severe."**

The ALJ determined that Coluciello-Pitkouvich suffered a multitude of severe impairments: scoliosis, degenerative disc and joint disease of the lumbar spine, osteopenia, major

6

depression, borderline personality disorder, a history of alcohol abuse, and gastritis. (R. 13-14). Coluciello-Pitkouvich argues on appeal that the ALJ erred in not including left hand paresthesia as a "severe impairment." However, after a thorough review of the administrative record, the ALJ determined that any residual injuries sustained from the fracture of her left middle finger and from lacerations to her left ring finger caused by a dog bite were no more than *de minimis* or "slight abnormalities" given the substantial evidence on the record.

An impairment "is not severe if it does not significantly limit" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see Meadors v. Astrue*, 370 F. App'x 179 (2d Cir. 2010) (summary order). Putting it another way, an impairment that is "'not severe' must be a slight abnormality … that has no more than a minimal effect on the ability to do basic work activities." Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, SSR 96-3P, 1996 WL 374181, at *1 (Soc. Sec. Admin. July 2, 1996). Nevertheless, an ALJ's residual functional capacity determination must account for limitations created by both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2); *see Parker-Grose v. Astrue*, 462 F. App'x 16, 17 (2d Cir. 2012) (summary order).

Coluciello-Pitkouvich sought treatment for her left hand twice. First, in May 2007, she complained of a lacerated left ring finger, which required stitches. Then, in October 2007, she fractured her left middle finger. She complained of numbness due to a tightly wrapped bandage. However, as the ALJ concluded, all indications in the record point toward the conclusion that Coluciello-Pitkouvich's left hand injuries have healed. In March 2008, Dr. Amalanthan, Coluciello-Pitkouvich's internist at the Brooklyn VA, did not find that the plaintiff experienced any numbness in her left middle finger upon examination. (R. 598). A month later, Dr. Schell,

7

the attending Brooklyn VA neurologist, stated Coluciello-Pitkouvich had left hand paresthesia, but did not recommend any treatment for the condition. (R. 592). Later that April, Brooklyn VA resident physician Dr. Leotta and resident orthopedist Dr. Freeman, in a joint treatment note, found the left middle finger healed, upon a patient examination and review of an x-ray of the area. (R. 210, 257-58, 378-79). Additionally, Dr. Zheng, a consulting medical examiner and specialist in physical and rehabilitative medicine specifically found Coluciello-Pitkouvich had full dexterity in her hand and fingers and full grip strength. (R. 272-73). Notably, after Dr. Schell's April 2008 report, there is no further mention of left hand paresthesia in the extensive treatment notes authored by the mass of Brooklyn VA physicians who treated the plaintiff. The condition only reappears later in Dr. Amalanthan's RFC questionnaire, to which the ALJ gave "limited weight" "because it is not supported by Dr. Amalanthan's treatment notes [or] the medical record as a whole." (R. 25).

To the extent Coluciello-Pitkouvich now faults the ALJ for purportedly overlooking possible left hand paresthesia in his consideration of severe impairments, the ALJ's omission is unsurprising because the plaintiff did not mention left hand paresthesia or numbness in her hand in her application for benefits or during her testimony at the November 2010 hearing. (R. 154, 158, 161). Indeed, it appears that the ALJ properly assessed Coluciello-Pitkouvich's left hand paresthesia, based on the evidence in the record. In his decision, the ALJ adequately documented Coluciello-Pitkouvich's hand injuries at step two of the analysis. (R. 14-15). And at step four, the residual functional capacity determination, the ALJ noted Dr. Zheng's findings regarding upper extremity motor activity and Dr. Amalanthan's opinion regarding left hand paresthesia (R. 22, 24). Accordingly, the ALJ made no error with respect to assessing Coluciello-Pitkouvich's impairments. In any event, even if Coluciello-Pitkouvich's left hand

paresthesia was as severe as she now alleges it was, there is no evidence in the record suggesting that the left hand numbness affected her for "a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 2012 (2002).

## 2. The Treating Physician Rule

Coluciello-Pitkouvich contends that the ALJ erred in assessing the treating physicians' opinions of both Dr. Amalanthan, her treating internist, and Dr. Gurdek, her treating psychiatrist.

### i. The ALJ Properly Applied Only "Limited Weight" to Dr. Amalanthan's Medical Opinion.

Dr. Amalanthan submitted a questionnaire stating Coluciello-Pitkouvich suffered from a number of ailments including upper and lower back pain, levo-rotoscoloisis, multi-level degenerative disc disease, and left hand paresthesia. Dr. Amalanthan also concluded that, as a result, the plaintiff was limited in a number of basic physical functions including sitting, standing, or walking for one hour; "repetitive reaching, handing, fingering, or lifting;" pushing, pulling, kneeling, bending, stooping; and "keeping the head and neck in a constant position." (R. 611-13, 615-16). The ALJ acknowledged this opinion and Dr. Amalanthan's earlier treatment notes in his decision, but concluded that Dr. Amalanthan's opinion was "wholly unsupported by the record." (R. 24-25). Upon a review of the administrative record, this Court concludes that although Dr. Amalanthan was Coluciello-Pitkouvich's treating physician, the ALJ properly determined Dr. Amalanthan's opinion was not well supported by the evidence and appropriately applied only "limited weight."

A plaintiff's treating physicians are generally afforded controlling weight in their medical determinations when their opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). This is because a treating physician, as compared to other sources of medical opinion, has a unique doctor-patient

relationship with the plaintiff. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d. Cir. 1993). However, an ALJ is not always required to give a treating physician's opinion controlling weight. When the treating physician's opinion is inconsistent with "other substantial evidence in the record, such as the opinions of other medical experts," the ALJ may apply something less than controlling weight. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see* 20 C.F.R. § 404.1527(c)(2). "The less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). When determining the weight assigned to a treating physician's opinion, the ALJ must consider various factors including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion through relevant evidence; (4) the consistency of the opinion with the record as a whole, (5) the physician's specialization and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6); *see generally Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998).

Dr. Amalanthan's opinion is not well-supported by laboratory and diagnostic test results. In assessing Coluciello-Pitkouvich's back injuries, Dr. Amalanthan used only one diagnostic test to support her assertions – a March 2008 lumbosacral x-ray from an outpatient health maintenance visit, (R. 611.), and did not follow-up with any further diagnostic testing. Although Dr. Amalanthan found Coluciello-Pitkouvich had levo-rotoscoloisis from that x-ray, she did not prescribe any treatment for the plaintiff's back. Rather the doctor provided nutritional counseling for Coluciello-Pitkouvich's other health conditions. (R. 600). Nor is Dr. Amalanthan's opinion supported by clinical findings. When asked in the questionnaire to list such findings that support her diagnosis, Dr. Amalanthan wrote "see records." (R. 610). However, nothing in Dr. Amalanthan's treatment notes suggests that Coluciello-Pitkouvich was

unable to sit for one hour, reach, handle, lift, finger, push or pull over a sustained 12 month period. *See* 42 U.S.C. § 423(d)(1)(A).

Additionally, many of Dr. Amalanthan's determinations are inconsistent with the rest of the record. Dr. Zheng, a specialist in physical and rehabilitative medicine, whose opinion was given "significant weight," found (upon examination) that Coluciello-Pitkouvich had "[l]ow back pain secondary to arthritis with bilateral radiating pain," and not levo-rotoscoliosis. Moreover, Dr. Zheng found that the claimant was "moderately limited for walking, standing, climbing lifting, squatting, and bending," but that Coluciello-Pitkouvich had "[n]o limitation with upper extremities for fine motor activities." (R. 273). Dr. Amalanthan's diagnosis of left hand parasthesia and related limitations are also discredited by Brooklyn VA neurologist Dr. Schell, who noted normal motor function of the hand, and like Dr. Amalanthan, did not prescribe further treatment. Furthermore, Dr. Amalanthan is Coluciello-Pitkouvich's treating internist, not a specialist. Because Dr. Amalanthan lacks specialty in orthopedic medicine, her opinion may appropriately be weighted less in the analysis. *See* 20 C.F.R. § 404.1527(c)(5).

The ALJ's determination that Dr. Amalanthan's assessment is inconsistent with the substantial evidence on the record and is not supported by objective measures is adequate. Accordingly, this Court defers to the ALJ's decision to apply only "limited weight" to the opinion.

### ii. The ALJ Failed to Properly Assess the Evidentiary Weight of Dr. Gurdek's Medical Opinion.

Although the ALJ addressed Dr. Gurdek's medical opinion, he failed to assess its evidentiary weight. This omission violated the treating physician rule.

In addition to determining the appropriate weight to apply to a non-controlling treating physician's opinion, the ALJ must expressly state the weight assigned and provide "good

11

reasons" for why the particular weight was assigned to each treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *McClean v. Astrue*, 650 F. Supp. 2d. 223, 228 (E.D.N.Y. 2009) (ALJ failed to "rebut, weigh or even acknowledge the findings" of treating internist); *see Schaal*, 134 F.3d at 505 (2d Cir. 1998). This Court does "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion" because "opinions from ALJ[]s [must] comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Snell*, 177 F.3d at 134 (remanding where that the Commissioner failed to explain why a treating physician's determination was not being credited although the decision made reference to treating physician's reports and agreed with reported findings); *Serianni v. Astrue*, No. 6:07–CV–250 (NAM), 2010 WL 786305, at *8 (N.D.N.Y. Mar. 1, 2010) (remanding where ALJ acknowledged plaintiff's treatment with treating physician but failed to assign any weight to treating physician's opinions). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even – and perhaps especially – when those dispositions are unfavorable." *Snell*, 177 F.3d at 134. A plaintiff is not entitled to have her treating physician's "opinion on the ultimate question of disability be treated as controlling, but she is entitled to be told why the Commissioner has decided – as under appropriate circumstances is his right – to disagree with [the treating physician]." *Id.*

It is undisputed that Dr. Gurdek was Coluciello-Pitkouvich's treating physician. Coluciello-Pitkouvich was treated by Dr. Gurdek, the Brooklyn VA's attending psychiatrist, on five occasions from April 28, 2008 to June 1, 2009 in conjunction with periodic therapy sessions with a hospital psychology intern supervised by the clinical psychologist. (R. 255-57, 504-05, 564-66, 573-579, 583-84, 587-90, 598). Dr. Gurdek maintained adequate treatment notes on

each occasion and filled out a treating physician questionnaire. (R. 276-81, 239, 293-41, 505-09, 564-66, 583-84, 598).

The ALJ indicated that he reviewed Dr. Gurdek's treatment notes from Couciello-Pitkouvich's visits. (R. 19). The ALJ noted Dr. Gurdek's findings from Coluciello-Pitkouvich's initial visit – that she suffered from "moderate, recurrent major depressive disorder and borderline personality traits" with a GAF score of 55.[2] (R. 19). The ALJ noted Dr. Gurdek's treatment plan of antidepressants and psychotherapy, and that the GAF score of 55 remained consistent throughout the course of treatment. (R. 19). The ALJ also noted Dr. Gurdek's prepared disability evaluation report. (R. 22). The ALJ noted that Dr. Gurdek found Coluciello-Pitkouvich had self-reported difficulties with daily living activities, concentration, stress, and being able to relate others. (R. 22). The ALJ also noted that Dr. Gurdek found Coluciello-Pitkouvich had no limitations in comprehension, memory, and adaptation, while having some limitations in sustained concentration and social interaction. (R. 22).

While the ALJ repeatedly referred to Dr. Gurdek's treatment notes and questionnaire responses in his factual recitation, nowhere did he assign weight to Dr. Gurdek's medical opinion or otherwise credit the opinion. Nor did he distinguish the opinion, although the ALJ's conclusion was not entirely consistent with Dr. Gurdek's report, which states that Coluciello-Pitkouvich is limited in her ability to function in a work setting due to stress management. (R.

---

[2] A Global Assessment of Function (GAF) score "is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260 (2d. Cir. 2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM–IV") (brackets in original)). "A GAF in the range of 51 to 60 indicates '[m]oderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).'" *Zabala v. Astrue*, 595 F.3d 402, 406 (2d Cir. 2010) (quoting DSM–IV, at 34.)

279). For this reason, the ALJ's decision is inadequate. Making "reference" to the physician's reports "does not exempt administrative decisionmakers from their obligation … to explain why a treating physician's opinions are not being credited." *Snell*, 177 F.3d at 134.

Nor does the ALJ's acknowledgment in his section assigning weight to medical opinions that he "considered … the GAF scores recited in the body of the [ALJ's own] decision," (R. 26.), satisfy the requirements set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6). First, as the ALJ acknowledged, GAF scores are single diagnoses, each part of larger comprehensive psychiatric examinations by the treating psychiatrist, and thus cannot be substituted for weighting of the large medical opinion. (R. 26.) ("[A] GAF score represents the claimant's condition as a snapshot in time and is not akin to a function-by-function assessment."). Second, the GAF score determinations by Dr. Mikhail Presman and treating psychologist Dr. Malkin-Ingolia are lumped together with Dr. Gurdek's GAF score in the ALJ's analysis. It is thus unclear whether the multiple physicians' GAF score opinions were each separately considered and weighted, as required by 20 C.F.R. §§ 404.1527(c)(2)-(6).

The Commissioner's reliance on *Bavaro v. Astrue* is unavailing. 413 F. App'x 382, 384 (2d Cir. Mar. 4, 2011) (summary order). In *Bavaro*, the Second Circuit "evaluate[d] the treating physician's opinion" itself through a "review of the record." *Id.* However, in *Bavaro*, the physician in question did not treat the claimant during the "most relevant period," and instead only treated the claimant before the onset date of injury. *Id.* Moreover, the treating physician's opinion was contradicted by five functional assessments. *Id.* Here, it would be inappropriate for this Court to independently evaluate Dr. Gurdek's opinion, as Dr. Gurdek's opinion is neither irrelevant nor inconsistent with the balance of the record.

Contrary to the Commissioner's argument, it is not the case that on remand, assigning weight to Dr. Gurdek's treating physician's opinion could lead to only one conclusion. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (Second Circuit stating that there is no need to require agency reconsideration "where application of the correct legal principles to the record *could lead only to the same conclusion*.") (emphasis added). Dr. Gurdek was the treating physician before and after Coluciello-Pitkouvich filed for disability insurance benefits. She diagnosed Coluciello-Pitkouvich with a multitude of psychological problems and opined in her questionnaire that Coluciello-Pitkouvich had limitations in both concentration and social interaction. (R. 276-81). Dr. Alexander's medical opinion was a far less favorable diagnosis for disability benefits. Nevertheless, the ALJ gave Dr. Alexander's opinion "some weight," despite being, as the ALJ noted, "not wholly consistent with the medical evidence in the record." (R. 25). Likewise, Dr. Lopez's opinion, a non-examining medical source, could support the ALJ's conclusion, and was given "considerable weight" by the ALJ. (R. 25). While various elements of both Dr. Gurdek's and Dr. Lopez's diagnoses are in accord, they gave different answers when asked to describe the degree of severity of Coluciello-Pitkouvich's mental impairments. Thus, Dr. Gurdek's medical opinion is sufficiently different from the weighted evidence proffered to warrant its own weight and consideration alongside the rest of record.

While Coluciello-Pitkouvich is not entitled to have her treating psychiatrist's opinion be given controlling authority for the ALJ's determination of disability benefits, it is her right to be told why the opinion was not given such weight. *See Snell*, 177 F.3d at 134. In sum, this Court finds that the ALJ properly determined which of Coluciello-Pitkouvich's impairments were "severe," and properly assessed the evidentiary weight of Coluciello-Pitkouvich's treating internist's opinion. However, the ALJ erred in failing to assess the evidentiary weight of

15

Coluciello-Pitkouvich's treating psychiatrist's medical opinion. For this reason, the Commissioner's final decision is reversed and the Court remands this matter to the Commissioner for a determination of Coluciello-Pitkouvich's eligibility for disability benefits with the inclusion of the treating psychiatrist's opinion and a determination of its evidentiary weight.

## CONCLUSION

For the forgoing reasons, Coluciello-Pitkouvich's motion for judgment on the pleadings is granted to the extent is seeks remand and the Commissioner's motion is denied. Accordingly, the Commissioner's final decision is reversed and the action is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　_____s/_____
　　　　　　　　　　　　　　　　　　　　　　　SANDRA L. TOWNES
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Brooklyn, New York
Dated: September 30, 2014